**CITY OF ANDERSON, et al., Appellants–Defendants,**

v.

**Gary A. WEATHERFORD, Appellee–Plaintiff.**

No. 48A04–9811–CV–534.

Court of Appeals of Indiana.

June 14, 1999.

Robert W. Rock, Anderson, Indiana, Attorney for Appellants.

W. David Neal, New Castle, Indiana, Attorney for Appellee.

## OPINION

BAILEY, Judge

### Case Summary

Appellants–Defendants, the City of Anderson, Police Chief Ed Leonard, Ser-

geant David Sieg, Officer Scott Clendenen, Officer Ron Crouse and Lieutenant Terry Richwine (referred to collectively as "the defendants") bring this interlocutory appeal of the trial court's denial of their Ind. Trial Rule 12(B)(6) motion to dismiss Appellee–Plaintiff Gary A. Weatherford's ("Weatherford") claim of intentional infliction of emotional distress. We reverse.

## Issue

Defendants raise one issue on appeal which we restate as whether the trial court properly denied their Motion to Dismiss.

## Facts[1]

On February 1, 1997, officers of the Anderson Police Department responded to a complaint of a loud party at Weatherford's residence. Sergeant David Sieg ("Sergeant Sieg") and two other officers proceeded to enter the premises without permission, probable cause or a warrant. Thereafter, the officers threatened Weatherford and his family with arrest. As a result of this incident, Weatherford filed misconduct charges with Lieutenant Terry Richwine ("Lieutenant Richwine") against these officers.

One week later, on February 8, 1997, several officers again went to Weatherford's home and attempted to enter. The officers became irritated when Weatherford informed his guests that they were not required to speak with the officers. The officers became further irritated when Weatherford taped the conversations and statements of certain officers that evening.

Prior to March 8, 1997, the date of Weatherford's arrest, Chief Ed Leonard ("Chief Leonard") informed Lieutenant Richwine that any charges against Weatherford were to be brought by summons and not by an arrest warrant. These instructions were in accordance with the usual manner in which a misdemeanor of this nature, namely, contributing to the delinquency of a minor, were dealt with by the department. However, contrary to Chief Leonard's instructions,

Lieutenant Richwine approved a warrant to be issued for Weatherford's arrest.

At least one or more days before Weatherford's arrest, Sergeant Sieg commented to his colleagues that it would be nice if Weatherford were arrested at the Anderson Wigwam during the Anderson regional basketball game. Subsequently, on March 8, 1997, Weatherford was arrested by Officer Ron Crouse ("Officer Crouse"), pursuant to a warrant, at the regional basketball game while watching his ward compete in the game. Following Weatherford's arrest, Sergeant Sieg, Officer Clendenen and Officer Crouse were disciplined by Chief Leonard.

## Procedural History

Weatherford filed a complaint for damages on April 1, 1998, claiming false arrest, false imprisonment and intentional infliction of emotional distress. With regard to the claim of intentional infliction of emotional distress, Weatherford specifically alleged, in addition to the above facts, that Sergeant Sieg, Officer Clendenen and Officer Crouse conspired to ignore standard procedure and improperly arrested and humiliated Weatherford in a public place in retaliation for Weatherford having filed a citizen's complaint.

On May 26, 1998, the defendants filed a motion to dismiss, arguing that Weatherford could not have been falsely arrested and incarcerated because his arrest was pursuant to a valid arrest warrant; and, in any event, the officers were immune from liability under the Indiana Tort Claims Act. The trial court conducted a hearing on this motion, and on September 30, 1998, the trial court granted the defendants' motion in part by dismissing Weatherford's claims for false arrest and false imprisonment. However, the trial court denied the defendants' motion to dismiss with regard to Weatherford's claim for intentional infliction of emotional distress. Thereafter, the defendants petitioned the trial court, pursuant to Ind. Appellate Rule 4(B)(6), for certification of this interlocutory order of appeal.[2] The trial court certified the order on October 21, 1998, and we grant-

---

1. Oral argument was held on April 21, 1999, at Saint Mary of the Woods College in Saint Mary of the Woods, Indiana. The facts set forth are those alleged in Weatherford's complaint.

2. In this appeal, Weatherford has chosen not to pursue the trial court's dismissal of his claims for false arrest and false imprisonment.

ed the City's Petition For Leave To Appeal From Interlocutory Order on November 30, 1998. This permissive interlocutory appeal ensued.

## Discussion and Decision

### I.  Standard of Review

#### A.  Indiana Trial Rule 12(B)(6)

When reviewing a T.R.12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted, we accept as true the facts as alleged in the complaint. *Hudgins v. McAtee,* 596 N.E.2d 286, 288 (Ind.Ct.App.1992). A T.R. 12(B)(6) motion to dismiss tests the legal sufficiency of the complaint. *Right Reason Publications v. Silva,* 691 N.E.2d 1347, 1349 (Ind.Ct.App.1998). When reviewing such a motion, we view the pleadings in the light most favorable to the non-moving party and draw every reasonable inference in favor of that party. *Id.* We will affirm the denial of a T.R. 12(B)(6) motion unless it is apparent that the facts alleged in the complaint are incapable of supporting relief under any set of circumstances. *Borgman v. Aikens,* 681 N.E.2d 213, 217 (Ind.Ct. App.1997), *trans. denied.*

#### B.  Governmental Immunity

Governmental immunity from suit is regulated by the Indiana Tort Claims Act. *Yerkes v. Heartland Career Ctr.,* 661 N.E.2d 558, 560 (Ind.Ct.App.1995), *trans. denied.* Pursuant to the Act, governmental entities and their employees are subject to liability for torts committed by them unless they can prove that one of the immunity provisions of the Act applies. *Id.* However, we narrowly construe governmental immunity against a claimant's right to bring suit. *Barnes v. Antich,* 700 N.E.2d 262, 265 (Ind.Ct.App. 1998), *trans. denied.* Moreover, whether a governmental entity is immune from liability under the Act is a question of law for the courts, although it may include an extended factual development. *State v. Livengood by Livengood,* 688 N.E.2d 189, 192 (Ind.Ct.App. 1997).

Here, the defendants seek immunity from liability under subsection (7) of the Tort Claims Act, which reads as follows:

A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from:

. . . .

(7) the adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations), unless the act of enforcement constitutes false arrest or false imprisonment;

IND.CODE § 34–13–3–3(7).

### II.  Argument and Analysis

#### A.  Intentional Infliction Of Emotional Distress[3] As An Independent Claim

The defendants contend that Weatherford's claim for intentional infliction of emotional distress cannot be proven independently of his false arrest and false imprisonment claims, which were dismissed by the trial court. Therefore, the defendants assert that because the false arrest and false imprisonment allegations were dismissed by the trial court, the remaining intentional infliction of emotional distress claim must also be dismissed, as it was not independently stated.

After providing the factual basis in his complaint, Weatherford stated the following:

11.  That Lt. Terry Richwine, Sgt. David Sieg, Officer Scott Clendenen and Officer Ron Crouse, together with other officers of the Anderson Police Department, sought to [purposefully] arrest Mr. Weatherford when the standard procedure would have been the issuance of a Summons and did so in retaliation for Mr. Weatherford filing a citizen's complaint on officers of the Anderson Police Department with the Chief of said Department, Ed Leonard.

12.  That the actions of Sgt. David Sieg, Officer Scott Clendenen and Officer Ron Crouse were a result of a conspiracy

---

3.  Intentional infliction of emotional distress occurs when "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another." *Conwell v. Beatty,* 667 N.E.2d 768, 775–76 (Ind.Ct.App.1996) (quotation marks omitted).

among officers of the Anderson Police Department to illegally and improperly arrest the Plaintiff in a public place, therefore intentionally inflicting upon him humiliation and emotional and mental distress.

13. That as [sic] direct result of the wrongful conduct of the named members of the Anderson Police Department, Plaintiff suffered damages for his wrongful arrest and incarceration, for loss of funds in having to post bond, significant funds expended to hire counsel and intentional infliction of humiliation, emotional distress, loss of freedom and monetary damages, all of which were occasioned by the named officers of the Anderson Police Department.

(R. 9–10). While one may envision a more artfully drafted complaint, we remind the defendants that Indiana is a notice pleading state. *Grzan v. Charter Hospital of Northwest Indiana*, 702 N.E.2d 786, 793 (Ind.Ct. App.1998). As such, Ind. Trial Rule 8(A) simply requires "(1) a short and plain statement of the claim showing the pleader is entitled to relief, and (2) a demand for relief to which the pleader deems entitled...." *Id.;* T.R. 8(A). Thus, a plaintiff basically need only plead the operative facts involved in the litigation. *Grzan*, 702 N.E.2d at 794. Moreover, "[a] complaint's allegations are sufficient if they put a reasonable person on notice as to why a plaintiff sues." *Id.*

■■■ Here, a reasonable person would be put on notice that Weatherford's claim of intentional infliction of emotional distress is not solely based on the false arrest or false imprisonment claims. Weatherford's claim is premised on the officers' alleged intentional retaliation and abuse of power and process when they violated standard police procedure, disregarded Chief Leonard's instructions and conspired to intentionally and publicly humiliate Weatherford. Furthermore, we note that Indiana now recognizes a separate cause of action for intentional infliction of emotional distress, without the need for an accompanying tort. *See Cullison v. Medley*, 570 N.E.2d 27, 30–31 (Ind.1991) (recognizing the tort of intentional infliction of emotion distress for the first time in Indiana). Therefore, we find that Weatherford suffi-

ciently stated a claim for intentional infliction of emotional distress.

### B. Indiana Tort Claims Act

Despite our conclusion that Weatherford sufficiently stated an independent claim for intentional infliction of emotional distress, we must next consider whether Weatherford's claim is barred by the Indiana Tort Claims Act in order to resolve the ultimate issue on appeal, namely, whether the trial court properly denied the defendants' Motion to Dismiss.

■■■ In seeking "shelter" from liability under subsection (7) of the Torts Claim Act, the defendants argue that they are immune from liability because Officer Crouse was on duty and acting within the scope of his employment as a police officer when he placed Weatherford under arrest. Specifically, the defendants note that Weatherford did not challenge the validity of the warrant in his complaint and that the trial court recognized the warrant's validity when it dismissed Weatherford's claims for false arrest and false imprisonment. Moreover, the defendants correctly assert that a valid arrest warrant may be executed by any law enforcement officer, on any day of the week and at any time of the day. IND.CODE § 35–33–2–3(a).

Weatherford counters, arguing that the Tort Claims Act does not apply to all conduct of law enforcement officers, that "the Act is clear on its face that immunity will only apply if the Defendants were acting within the scope of their employment" and that the defendants' "extreme" and "outrageous" conduct fell outside the scope of their employment. (Appellee's brief at 3–4). Thus, Weatherford concludes, the defendants may not avoid liability by claiming immunity under Indiana's Tort Claims Act.

■■■ While the record clearly demonstrates that in arresting Weatherford, the defendants blatantly disregarded Chief Leonard's instructions, as well as standard departmental procedure, thereby subjecting themselves to internal disciplinary procedures, we cannot conclude that the officers' conduct in

the case at bar served to remove them from the cover of the Tort Claims Act.

The officers arrested Weatherford pursuant to a valid arrest warrant. Moreover, such action was done in furtherance of their employer's business, that is, to execute a duly issued warrant. Our supreme court has clarified that "[i]n Indiana, an employee's tortious act may fall within the scope of his employment if his purpose was, to an appreciable extent, to further his employer's business." *Kemezy v. Peters*, 622 N.E.2d 1296, 1298 (Ind.1993) (quotation omitted). Moreover, our supreme court has explained that:

> [e]ven the commission of an intentional criminal act may be considered as being within the scope of employment if the criminal acts originated in activities so closely associated with the employment relationship as to fall within its scope....
>
> ....
>
> Even willful or wanton behavior does not necessarily remove one from the scope of his employment.

*Id.*

Thus, while we do not condone the officers' callous behavior in the case at bar, we cannot conclude that, as a matter of law, the officers' arrest of Weatherford was so incompatible with the performance of their employment as to be deemed outside the scope of their employment thereby depriving them of the protection specifically set forth in IND.CODE § 34–13–3–3(7). *Cf. City of Fort Wayne v. Moore,* 706 N.E.2d 604 (Ind.Ct.App.1999) (conduct of non-uniformed, off-duty police officer who initiated physical confrontation with motorist while driving his personal vehicle was egregious as to be outside scope of employment), *trans. pending.* Accordingly, we remand this cause to the trial court with instructions to dismiss.

Reversed.

NAJAM, J. concurs.

BAKER, J., concurs in part and dissents in part with separate opinion.

BAKER, Judge, concurring in part and dissenting in part.

While I agree with the majority's holding that Weatherford independently stated a claim for intentional infliction of emotional distress and agree that his claim against the City and Chief Leonard should be dismissed, I respectfully dissent from its conclusion that the Indiana Tort Claims Act (the Act) provides immunity for Sergeant Seig, Officer Clendenen, Officer Crouse and Terry Richwine (referred to collectively as "the officers"). I make the initial observation as a life-long Hoosier that, at least in Indiana, no one can question that removing someone from a regional basketball game in his home town, while watching his ward play, is as embarrassing and disruptive as one can imagine.

I acknowledge that service of a valid arrest warrant generally results in immunity under subsection (7) of the Act because the arresting officer is enforcing the law and acting within the scope of his employment. However, limits have been established which recognize that officers are not immune from liability for all actions that are somehow tied to effecting an arrest. Specifically, our supreme court has established that subsection (7) of the Act only confers immunity for the breach of a public duty, and provides no refuge to governmental entities or employees when a private duty[1] to an individual citizen to refrain from engaging in tortious conduct is breached. *Quakenbush v. Lackey,* 622 N.E.2d 1284, 1291 (Ind.1993). For example, the use of excessive force is not immunized conduct. *See e.g., Kemezy v. Peters,* 622 N.E.2d 1296, 1297 (Ind.1993). Moreover, an officer is not immune from liability if he drives his squad car in a negligent manner

1. Indiana case law has consistently held that a private duty arises when the relationship between the parties creates a duty owed to a particular individual and not to the public at large. *See e.g., Greathouse v. Armstrong,* 616 N.E.2d 364, 368 (Ind.1993); *Aldridge v. Indiana Dept. of Natural Resources,* 694 N.E.2d 313, 316 (Ind.Ct. App.1998), *trans. denied; Simpson's Food Fair,* *Inc. v. City of Evansville,* 149 Ind.App. 387, 391, 272 N.E.2d 871, 874 (1971). Thus, a governmental entity's affirmative act in relation to a particular individual may give rise to a private duty to that individual. *Henshilwood v. Hendricks County,* 653 N.E.2d 1062, 1068 (Ind.Ct. App.1995), *trans. denied.*

and causes damages, because the officer has a private duty to drive with reasonable care. *See Quakenbush,* 622 N.E.2d at 1291; *Dahms v. Henry,* 629 N.E.2d 249, 252 (Ind. Ct.App.1994).

Similarly, I would hold that the officers in the instant case owed Weatherford a private duty to refrain from intentionally inflicting emotional distress on him by following Chief Leonard's specific instructions regarding Weatherford. Furthermore, I believe the officers breached this duty by deliberately disregarding Chief Leonard's instructions that Weatherford was not to be arrested and, instead, conspiring to publicly arrest and humiliate him in retaliation for his filing of misconduct charges. In my view, the officers should not enjoy immunity for their intentional violation of orders that were specific to Weatherford.[2] Therefore, I would affirm the trial court's denial of the officers' motion to dismiss.

One the other hand, while I would hold that the City and Chief Leonard are also not immune, I would reach the same result as the majority as to these defendants, only for a different reason, and reverse the trial court's denial of their motion to dismiss. In my view, while they mounted a joint effort with the officers in this appeal, the City and Chief Leonard stand in a position different from that of the officers. Under the doctrine of respondeat superior, the City and Chief Leonard must be exonerated because there is no basis for their liability. *See City of Fort Wayne v. Moore,* 706 N.E.2d 604, 607 (Ind. Ct.App.1999) (noting the well-established maxim that under the doctrine of respondeat superior, an employer is only liable for the acts of its employees which were committed within the scope of their employment). Specifically, I note that Weatherford argued in his appellate brief that the officers' actions fell outside their scope of employment, and he conceded at oral argument that the claim should not survive against these defendants because the basis of his complaint for intentional infliction of emotional distress is that the officers acted outside the scope of their employment by disregarding the specific di-

rectives of their superior, for which they were later reprimanded. Appellee's Brief at 5–7. Thus, I would hold that the City and Chief Leonard cannot be held vicariously liable for the officers' intentional violation of Chief Leonard's specific instruction, which was necessarily outside the bounds of their employment.

In sum, I would affirm the trial court's denial of the motion to dismiss as to the officers and reverse its denial of the motion as to the City and Chief Leonard.

---

2. Had Chief Leonard not given such an instruction, I would hold that the officers could hide behind their public duty and, thus, the immunity provided under the Act.